IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355 HEALTH AND WELFARE FUND, | * <br> * <br> * |
| Plaintiff, | * Civil Action No. RDB 19-3213 <br> * |
| v. | * |
| THE ESTATE OF MARK A. DELINSKI, et. al., | * <br> * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND FOR ACCELERATED DISCOVERY**

### I.   INTRODUCTION

Plaintiff, Truck Drivers and Helpers Local Union No. 355 Health and Welfare Fund ("Health Fund") brought this action, by its Trustee, to protect its right, for the benefit of its participants and beneficiaries, to enforce the terms of its Plan under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 502(a)(3).  Specifically, Plaintiff seeks to enforce the terms of its Plan that provide for subrogation of the Health Fund by a participant as set forth in its Summary Plan Description ("SPD").  The failure of a participant to comply with this provision represents an injury to the Health Fund that is without an adequate legal remedy, and a right of the Health Fund that will be imminently, substantially and irreparably injured, absent the relief requested.

Plaintiff filed, contemporaneously herewith, its Motion for a Temporary Restraining Order and/or Preliminary Injunction and Accelerated Discovery, a Complaint for Declaratory Judgment and Request for Injunctive Relief in this action against Defendants:  The Estate of Mark A. Delinski ("Estate"), Cynthia Delinski ("Mrs. Delinski"), Eric Delinski, Clifford Hardwick, Esquire ("Mr. Hardwick"), Hardwick & Harris, LLP, the Hardwick & Harris Escrow Account ("Escrow") and a Trust for the Benefit of the Beneficiaries of Marc A. Delinski ("Trust").

Plaintiff, Health Fund, is an employee welfare benefit plan as defined in Section 3(1) of ERISA, 29 U.S.C. §1002(1).  Mrs. Delinski is a dependent and beneficiary of Mr. Delinski who is participant in the Health Fund.  Eric Delinski is, upon information and belief, Mr. Delinski's son, a dependent and beneficiary of Mr. Delinski who is a participant in the Health Fund.  Mr. Delinski suffered severe injuries as a result of a slip and fall accident for which a third party was liable.  The Health Fund extended benefits to Mr. Delinski for treatment of the injuries he suffered as a result of the accident.  Mr. Delinski passed away on June 28, 2015, as a result of injuries related to the accident. Upon Mr. Delinski's death, the Estate of Mark A. Delinski, Cynthia Delinski, and Eric Delinski filed suit against Johns Hopkins Bayview Medical Center, Inc., The Johns Hopkins Health System, Corporation, Johns Hopkins Medicine, and the Johns Hopkins Hospital, Inc. (collectively referred to as Johns Hopkins and related entities").  The Estate of Mark A. Delinski, Cynthia Delinski, and Eric Delinski received remuneration from Johns Hopkins Bayview Medical Center, Inc. in settlement of their claim(s) for personal injury in the amount of $160,000.00.

Mr. Hardwick is an attorney who represents/represented the Estate of Mark A. Delinski, Mrs. Delinski, and Eric Delinski in their claim(s) against Johns Hopkins and related entities.  To no avail, the Health Fund has made repeated demands, addressed to Mr. Hardwick, for equitable restitution of the benefits extended on Mr. Delinski's behalf, pursuant to the terms of the plan, for which a third party was liable.  According to a Settlement Agreement and Release executed by the parties, Mr. Hardwick negotiated a settlement with Johns Hopkins Bayview Medical Center for the claim, expressly including the Health Fund, on behalf of the Estate of Mark A. Delinski, Cynthia Delinski, and Eric Delinski, and received payment of same, without notice to Plaintiff until months after the fact.

It is evident by the actions of the Defendants, and the application of the relevant caselaw to this action, that the Health Fund will suffer immediate, substantial and irreparable damage if Defendants are permitted to continue to violate the terms of the Health Fund and its Summary Plan Description ("SPD") and disburse identifiable money belonging in good conscience to the Plaintiff.

## II.    STATEMENT OF FACTS

1.     The SPD issued by the Health Fund at the time of Mr. Delinski's accident through the present provides for Subrogation of the Health Fund by a participant as follows:

> If you or one of your dependents is injured directly or indirectly by a third party, the Plan will pay covered benefits under the following circumstances. If you receive a payment from the third party, and/or from an insurance company, employer or other agent, assign, or relative of the third party as a result of settlement or award for your injuries, the Plan will have the right to an equitable lien over the payment, and the Plan will have a right of first recovery from the payment, without deduction of attorneys' fees or

3

    costs, up to the full amount of the recovery. The Plan's right of first recovery shall apply regardless of whether the award or settlement is designated for medical benefits, damages, pain and suffering or any other designation related to the injuries. The common fund and make whole doctrines are specifically rejected, for the purposes of this section.

Complaint, ¶ 13, SPD, p. 30, a copy of which is attached hereto as Exhibit 1.

  2. Mr. Delinski was injured in a slip and fall accident while in the care of Johns Hopkins Bayview Medical Center, on or about July 19, 2014, for which a third party was liable. Complaint, ¶ 15.

  3. Mr. Delinski was entitled to seek and receive benefits from the Health Fund. Complaint, ¶ 16.

  4. Mr. Delinski sought and received benefits from the Health Fund in relation to the injuries incurred as a result of his accident on or about July 19, 2014, in the amount of $250,820.98. Complaint, ¶ 17-18.

  5. Mr. Delinski signed a Subrogation Agreement with the Health Fund wherein he acknowledged the obligation to repay the Health Fund to the full extent of benefits received by him or paid on his behalf. Complaint, Ex. 1.

  6. Mr. Hardwick signed a Subrogation Agreement with the Health Fund wherein he acknowledged his client's obligation to repay the Health Fund to the full extent of benefits received by him or paid on his behalf. Complaint, Ex. 1.

  7. Mrs. Delinski affixed her signature as a witness to the executed Subrogation Agreement. Complaint, Ex. 1.

  8. Thereafter, Mr. Delinski died, on or about June 28, 2015, as a result of injuries related to the accident of July 19, 2014.

9. According to the Settlement Agreement and Release executed by the parties to the claims for which a third-party was liable, the Estate of Mark A. Delinski, Cynthia Delinski, and Eric Delinski received a settlement from Johns Hopkins and related entities as a result of the accident of July 19, 2014, in an amount of $160,000. Complaint, ¶ 22, 25.

10. Upon information and belief, the proceeds of that settlement are held in Trust for the Estate of Mark A. Delinski, Cynthia Delinski, and Eric Delinski, established by their attorney, Clifford Hardwick, Esquire and/or Hardwick & Harris, LLP. Complaint, ¶ 26.

11. The Health Fund has made repeated demands (including an offer of settlement) for payment of the benefits extended on Mr. Delinski's behalf for which a third party was liable, and for which the Estate of Mark A. Delinski, Mrs. Delinski, and Eric Delinski received remuneration on behalf of Mr. Delinski.  See Letters from Health Fund and Fund Counsel, copies of which are attached hereto as Exhibit 2.

12. On October 23, 2019, Mr. Hardwick responded, on behalf of his clients, rejecting the Plaintiff's offer of settlement and threatening to "close the file" on the matter.

### III. LEGAL ARGUMENT

The Health Fund, by its fiduciary, has the right to bring an action in this Court for equitable relief as a result of the failure of Mr. Delinski, his estate, his beneficiaries, heirs, and assigns to comply with the terms of the Plan.  Section 502(a)(3) of ERISA provides in pertinent part:

> **Section 502 Civil Enforcement.**
> **(a)    Persons Empowered to Bring Civil Action.** – A civil action may be brought –
> **(3)** by a …fiduciary (A) to enjoin any act or practice which violates an provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this title or the terms of the plan;….

29 U.S.C. §1132(a)(3).

    A.    AN IMMEDIATE *AD LITEM* INJUNCTION IS NECESSARY TO PRESERVE THE RIGHTS OF THE PLAINTIFF AND ITS PARTICIPANTS.

The Health Fund requests injunctive relief to protect itself from irreparable harm and to prevent the judicial process from being rendered meaningless by Defendants' actions to disburse the property in which the Health Fund has a unique property interest. The purpose of the grant of a preliminary injunction is to preserve the status quo so that a court can render a meaningful decision after trial on the merits. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013) (*citing* Sun Microsystems, Inc. v. Microsoft Corp., 333 F.3d 517, 525 (4th Cir. 2003)).  The ability for Defendants to distribute the property, so as to make it untraceable or unidentifiable, would endanger the Court's ability to render a meaningful decision on the merits of the pending litigation.

According to the Supreme Court, the following factors should be considered in a determination of preliminary injunctive relief:

(1)    whether Plaintiff will suffer irreparable harm without the injunctive relief sought;

(2)    whether the balance of equities tips in Plaintiff's favor;

(3)    the likelihood of success on the merits; and

(4)    the public interest.

6

Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  Specifically, "the balance of equities and consideration of the public interest — are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." Id. at 32.  In the present case, the outcome of consideration of the four factors results in a finding that the injunctive relief requested by Plaintiff should be granted to protect the interests of justice.

    1.      ABSENT INJUNCTIVE RELIEF, PLAINTIFF WILL SUFFER SUBSTANTIAL, IRREPARABLE INJURY.

The Health Fund asserts that it is entitled to subrogation of benefits paid on Mr. Delinski's behalf for which a third party was liable, and from which the Estate of Mark A. Delinski, Mrs. Delinski, and Eric Delinski received recovery on behalf of Mr. Delinski, pursuant to the terms of the Plan.  The settlement received from the third party on Mr. Delinski's behalf was dispensed from the third party on March 8, 2019.  These funds are clearly traceable, in the possession of the Defendants, belong in good conscience to the Health Fund, and would unjustly enrich Defendants were they not required to honor the terms of the Plan.  The Health Fund seeks injunctive relief to prohibit the distribution of the funds over which it contends it has a constructive trust pending the outcome of trial on the merits.

Section 502(a)(3) of ERISA provides the remedial framework for plan fiduciaries to obtain appropriate equitable relief to enforce the terms of a plan.  The Supreme Court has repeatedly considered cases similar to this and determined that a health plan may impose a constructive trust and/or an equitable lien over settlement proceeds from third parties.

In Great West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court explained that an ERISA claim seeking reimbursement of a subrogated

7

interest is equitable, and thus recoverable, if the money or property over which a constructive trust is to be imposed can be identified as belonging in good conscience to the plaintiff, and can be clearly traced to particular funds or property in the defendant's possession.  Id. at 213 (citing 1 Dobbs § 4.3(1) at 587-588).  Subsequent to Knudson, the Supreme Court expounded on a health plan's right to enforce subrogation provisions, holding that a plan's claim seeking reimbursement for medical expenses after a participant or beneficiary recovered money from a third party is equitable in nature because the terms of the plan create an equitable lien by agreement on third party settlements.  Sereboff v. Mid Atlantic Medical Serv., 547 U.S. 356, 368 (2006).  Even though an ERISA plan has established an equitable lien by agreement, enforceable under Section 502(a)(3) of ERISA against a participant or beneficiary's settlement proceeds, once the funds are dissipated, and no longer traceable or identifiable, the plan's right to relief is defeated—its constructive trust no longer constitutes an equitable remedy. Montanile v. Board of Trustees of the Nat'l Elevator Indus. Health Benefit Plan, 136 S. Ct. 651, 660 (2016).

In this case, if Plaintiff is not granted injunctive relief, its cause of action could be extinguished, thus irreparable.  If Defendants are not prevented from distributing the funds held in trust in settlement of claims on behalf of Mr. Delinski, the funds over which Plaintiff has a constructive trust could suffer myriad fates, including:  not being identifiable, not being traceable, and no longer being in the possession of the Defendants.  This would irrevocably eliminate the Health Fund's cause of action for equitable relief.  According to the Supreme Court in Montanile, once the funds are distributed, and no longer traceable or identifiable, the Health Fund no longer has a constructive trust over

8

funds that belong in good conscience to Plaintiff. Without an equitable cause of action, the Health Fund is without civil recourse. Failure, therefore, to grant the injunctive relief that Plaintiff requests could render the Court's decision of the merits of the Health Fund's claim moot and frustrate the interests of justice.

The *raison d'etre* of the preliminary injunction is to preserve the status quo during the course of litigation and to "prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013) (citing Sun Microsystems, Inc. v. Microsoft Corp., 333 F.3d 517, 525 (4th Cir. 2003)). In this case, if the money held by the defendants is distributed, the rights to that money, as decided by the Court, could be extinguished because the proceeds of the settlement could no longer be identifiable and traceable. This would eradicate Plaintiff's equitable cause of action, causing the Health Fund to suffer immediate, substantial and irreparable damage that severely outweighs the damage that Defendants would suffer if injunctive relief is granted.

2. THE BALANCE OF EQUITY TIPS IN PLAINTIFF'S FAVOR

The second consideration established by the Supreme Court in a motion for preliminary injunction is to balance the degree of equities, and whether the balance of equities tips in Plaintiff's favor. Winter, 555 U.S. at 20. If the injunctive relief requested by the Health Fund is denied, its cause of action could be negated, therefore rendering a decision on the merits meaningless. If the injunctive relief requested by the Health Fund is granted, the defendants would be estopped from disbursing money which has been sitting in a trust until the parties have an opportunity to litigate the matter. Defendants

9

will suffer no damage for being prohibited from using funds with which they have been unjustly enriched and to which they are not entitled.

The terms of the Health Fund's SPD explain that the Health Fund will pay claims that arise as a result of an accident for which a third party is liable, on the condition, however, that the Health Fund is reimbursed from the proceeds of any settlement between the participant (and/or the participant's dependents) and the culpable party. A participant's recovery of claims from a third party that he or she did not incur is unjust enrichment.

The subrogation provision of the plan enables the Health Fund to extend benefits to a participant in a situation in which the participant would not normally be entitled to benefits. The same provision, however, imparts an obligation for the return of those benefits upon recovery from a third party. All participants and dependents of participants in the Health Fund are bound by this provision. All of the participants are required to honor this obligation in order to receive the provision's benefit. Mrs. Delinski, Eric Delinski, and Mr. Hardwick were aware of this obligation; they refused, however, to honor it. The Defendants will not suffer a burden by being required to abide by the terms of the plan that extended Mr. Delinski necessary medical benefits in his time of need. Nor will they be burdened by being prohibited from exercise of control over funds that belong in good conscience to the Plaintiff.

In applying the balance of equity test to this case, it is evident that the balance of equity overwhelmingly favors Plaintiff. In the circumstance under which the balance of equity favors the plaintiff, the likelihood-of-success test is replaced by a showing that plaintiff has raised substantial questions as to merit litigation. Not only has the Plaintiff

raised questions that merit litigation, the Health Fund is also likely to succeed on the merits.

    3.    THE HEALTH FUND WILL SUCCEED ON THE MERITS OF ITS REQUEST FOR EQUITABLE RELEIF FOR FAILURE TO COMPLY WITH PLAN TERMS.

Since the Supreme Court's decision in Knudson, the Fourth Circuit, as well as numerous Circuit Courts, have had the opportunity to address the right of ERISA health plans to seek equitable relief in enforcement of subrogation provisions.  The Fourth Circuit addressed a health plan's right to equitable relief in enforcing its subrogation provision in Wal-Mart Stores, Inc. v. Carpenter (In re Carpenter), 36 Fed. Appx. 80, 81 (4th Cir. 2002).  In Carpenter, the Fourth Circuit affirmed, consistent with the Supreme Court's decision in Knudson, the bankruptcy and district court's finding that a health benefit plan with a reimbursement provision had an equitable lien on identifiable personal injury settlement proceeds received by its participant, Tina L. Carpenter.  Id. at 82.

Further, in Sealy, Inc. v. Nationwide Mutual Ins. Co., 286 F. Supp. 2d 625, 631 (M.D.N.C. 2003), the United States District Court for the Middle District of North Carolina held that a qualified employee health and welfare plan was entitled to equitable relief in enforcement of a subrogation provision of an ERISA health plan where the funds at issue were identifiable, had not been dispersed, were traceable, and belong in good conscience to the health plan pursuant to its subrogation section.

The Health Fund seeks equitable relief in the form of a constructive trust over money that belongs in good conscience to the Health Fund, in the Defendants' possession, that is clearly traceable and identifiable as proceeds from the settlement of

11

the claim(s) on behalf of Mr. Delinski against a third party, pursuant to the terms of the Subrogation Agreement signed by Mr. Delinksi and Mr. Hardwick, the Summary Plan Description, and ERISA. The Health Fund will succeed on the merits of the case in accordance with applicable caselaw and consistent with public policy.

    4.      PUBLIC INTEREST IS SERVED BY THE ENFORCEMENT OF ERISA PLAN TERMS.

The Health Fund is a self-insured employee welfare benefit plan as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1). It was created to provide medical benefits to members of the Truck Drivers and Helpers Local Union No. 355 and their dependents and beneficiaries. Similar to many entities that provide health benefits to employees or participants, the Health Fund has experienced exponential increases in the costs associated with providing quality health care. Many health funds are forced to reduce benefits in order to combat skyrocketing prescription drug and health care costs. The subrogation provision of the Health Fund's SPD serves the purpose of recovering money for benefits conferred for which a third party is liable that rightfully belongs to the Health Fund. A participant is not entitled to receive benefits from the Health Fund, recover those expenses from a third party, and then retain those funds. When one member is unjustly enriched by violating the terms of the Plan by failing to reimburse the Health Fund for benefits paid on the participant's or dependent's behalf for which a third party was liable, the Health Fund, and more importantly, its participants and beneficiaries, suffer.

"[T]he detailed provisions of § 502 (a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures and the public interest in encouraging the formation of

12

employee benefit plans…." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) (noting that ERISA recoveries benefit the entire plan, not just one individual). Public policy, and the legislative intent of ERISA, is to promote the establishment of employee benefit plans. Defendants' failure to comply with the terms of the Plan deplete the Health Fund's much needed resources for payment of benefits to participants and dependents who suffer injuries for which a third party is *not* liable. This harms the participants and beneficiaries for the benefit of whom the Health Fund was created and is statutorily required to serve. If participants and their dependents are permitted to violate plan terms to the determent of other beneficiaries, and the plan itself, the public policy of promoting the establishment of employee benefit plans is thwarted.

Public interest lies not only in avoiding unjust enrichment at the expense of other ERISA plan beneficiaries, but in establishing a right of equitable relief for violation of plan terms. Failure to give the civil enforcement provisions of ERISA teeth would encourage others violate plan terms to the detriment of all participants and beneficiaries. Public interest would be best served if the injunctive relief Plaintiff seeks were granted.

  B.  **GOOD CAUSE EXISTS FOR WHICH THE COURT SHOULD PERMIT ACCELERATED DISCOVERY.**

The Health Fund requests, in its motion for injunctive relief, accelerated discovery pursuant to Federal Rule of Civil Procedure 26(d) ordered by the Court in the interests of justice. Specifically, the Health Fund requests that Defendants provide information on the identity of all trusts and accounts in which proceeds in settlement related to Mr. Delinski's injuries/claims are located. The Health Fund's need for this information is as critical to the interests of justice as the previously requested injunctive relief.

Justice Scalia, in <u>Knudson</u> suggests that the outcome of the case, and necessarily, the nature of the relief requested, might have been different had Great West brought its action against the respondents' attorney and the trustee of the Special Needs Trust, rather than Mrs. Knudson.[1]  534 U. S. at 214.  Justice Ginsburg, in her dissent, lucidly articulates this distinction by explaining that the majority's opinion contemplates that a claim for constructive trust would lie in equity, and hence, the outcome of the case would be different, had the plaintiff sued the party who has possession of the funds as opposed to the defendant.  <u>Id.</u> at 225-26 (Ginsburg, J. dissenting).  Indeed, the many Circuit Court cases that have been decided since <u>Knudson</u> have turned on such a distinction.

Today, the Health Fund's claim is for equitable relief.  If injunctive relief is not granted, the Health Fund's right to relief may be permanently destroyed, harming the participants and beneficiaries the Health Fund is designed to benefit.  In order for the Court to preserve the status quo, and in order for the civil enforcement provisions of ERISA to have consequence, accelerated discovery coupled with injunctive relief, on this limited basis, is necessary.

## IV. CONCLUSION

The Health Fund has requested injunctive relief that is crucial to maintain the status quo pending litigation enabling the Court to render a meaningful decision on the merits.  The injunctive relief would cause little, if any, harm to the Defendants.  Specifically, the relief requires them to comply with the terms of the Subrogation Agreement Mr. Delinski and Mr. Hardwick executed and the Summary Plan Description

---

[1] "The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred.  The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a

14

pursuant to which received benefits. The issues presented by the litigation constitute colorable questions for litigation. Perhaps, more importantly in this case than in others, injunctive relief promotes an important public policy supporting and encouraging the welfare of employee benefit plans, and the participants and beneficiaries for the benefit of whom the plans are created.

                                                        Respectfully submitted,

  November 6, 2019                             /s/ Corey Smith Bott  
Date                                                   Corey Smith Bott  
                                                           Bar No. 25673

                                                           /s/ Shauna Barnaskas  
                                                           Shauna Barnaskas  
                                                           Bar No. 16755

                                                           Abato, Rubenstein and Abato, P.A.  
                                                           809 Gleneagles Court, Suite 320  
                                                           Baltimore, Maryland 21286  
                                                           (410) 321-0990

                                                           Attorneys for Plaintiffs

---

constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents."